1  Stephen B. Morris (SBN 126192)
   **MORRIS and ASSOCIATES**
2  444 West C Street, Suite 300
   San Diego, California 92101
3  Telephone: (619) 239-1300
   Fax:       (619) 234-3672
4
   Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA RUDD for herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BORDERS, INC. and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. 3:09-cv-00832-BTM-NLS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date:      June 19, 2009<br>Time:      11:00 a.m.<br>Courtroom: 15<br>Judge:     Honorable Barry Ted Moskowitz |

## TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT .............. 1

II. ARGUMENT ............................................. 3

    A. Civil Code §1749.5 unambiguously provides Plaintiff the right to redeem her Gift Card for its cash value ........................ 3

    B. Subsection (b)(2) is not "Superfluous" ........................ 5

    C. The legislative History supports Plaintiff's claim that she has the right to redeem her Gift Card for its cash value ...................... 6

    D. Plaintiff has standing ................................. 10

    E. Plaintiff states a claim for Unjust Enrichment ................. 11

III. CONCLUSION ......................................... 11

# TABLE OF AUTHORITIES

<u>Cases:</u>                                                                 Page

*Scripps Health v Marin*,
72 Cal.App.4th 324 (1999) ............................................... 6

*Oden v Board of Administration*,
23 Cal.App.4th 194 (1994) ............................................... 6

*Lectodryer v Seolbank*,
77 Cal.App.4th 723 (2000) .............................................. 11


<u>Statutes and Rules:</u>

Business and Professions Code § 17200, *et seq* ....................... 1, 2

Civil Code §1749.5 .................................... 1, 2, 3, 4, 5, 6, 7, 9

Civil Code § 1749.45 ..................................................... 3

Civil Code §1448 ......................................................... 4

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This class action is brought to ensure that California residents can redeem, for their full cash value, Borders Gift Cards which are sold to customers. Plaintiff seeks nothing more than to protect her interest in being able to return an item, in this case a Gift Card, for its cash value. Borders Gift Cards say that they cannot be redeemed for cash. Just like returning a sweater or a blouse for cash, plaintiff asserts she should be able to return her Gift Card for its actual cash value. She thus brings her claim under the Unfair Competition Law (UCL) contained in California Business and Professions Code section 17200, *et seq*. Plaintiff alleges that Defendant's conduct is unlawful, fraudulent and/or unfair.

Borders objects to Plaintiff's request that she be refunded the full cash value of her $20 Gift Card on several grounds. These are discussed below. In general, though, Borders claims that Civil Code section 1749.5(b)(1), which provides in part that any Gift Certificate (which includes by definition Gift Cards) is "redeemable in cash for its cash value, ...." does not mean that such cards are actually redeemable in cash for their cash value at all, but rather that retailers can unilaterally decide to hand over another Gift Certificate instead of cash. This argument is premised upon the balance of the sentence in C.C. 1749.5(b)(1) which provides (after the comma) ", *or* subject to replacement with a new Gift Certificate at no cost to the purchaser or holder." One can only imagine a customer walking into a Borders store with her Gift Card asking for cash, only to be told that she can have another identical Gift Card instead. Such a result would be absurd and was manifestly not intended by the express wording of C.C. 1749.5(b)(1) entitling customers to receive at their election the *full cash value* of a Gift Card upon request. If retailers and not customers were allowed to determine whether to redeem Gift Cards for cash, the right to redemption would be thwarted altogether. The whole idea of replacement of Gift Cards at no cost to the consumer relates to lost or stolen Cards and Gift Certificates and does not provide an election to

retailers. Hence the separation of this element of replacement by a comma from the idea that Gift Cards which are sold are redeemable for their full cash value.

The question next arises as to why, if C.C. 1749.5(b)(1) provides a right to redeem Gift Cards for their full cash value, the legislature would bother to amend the statute to add C.C. 1749.5(b)(2)?[1] Borders argues that such an amendment would be superfluous if Plaintiff's reading of C.C. 1749.5 (b)(1) is correct. Not so. Section (b)(1) relates to Gift Certificates which are "*sold.*" Subsection (b)(2) relates to "*any* Gift Certificate ..." Subsection (b)(2) was added by the legislature to address the problem that retailers have been issuing Gift Cards as "rebates" and in other promotional contexts and that consumers often have found themselves with small, essentially unusable, balances on these non-purchased cards. Subsection (b)(2) therefor was a compromise amendment to provide to consumers who have these types of Gift Cards and Gift Certificates the right to cash out their small remaining balances, in this case balances less than $10.00. There is no conflict between subsections (b)(1) and (b)(2). Too, since subsections (b)(1) and (b)(2) may be reconciled, it would be improper to delve into the convoluted legislative history of the various amendments of the statute to seek the plain meaning which appears on the face of the statute. Furthermore, it is noteworthy that while Borders concedes that in California Gift Cards with balances of less than $10.00 are redeemable for cash, its Gift Cards provide: "not redeemable for cash."

Borders next argues that Plaintiff has no standing and that she has not suffered an "injury in fact." Nevertheless, Borders correctly concedes that in order to meet the standing requirement for an unfair competition claim under Bus. and Prof. Code section 17200 a Plaintiff need only establish injury to a "legally protected interest." Borders argues that since its interpretation of C.C. 1749.5 is

---

[1] Civil Code section 1749.5(b)(2) provides: "Notwithstanding paragraph (1) any gift certificate with a cash value of less than ten dollars ($10) is redeemable in cash for its cash value."

correct Plaintiff had no right to redeem her Gift Card for cash and, therefor, has suffered no "injury in fact". This circuitous argument begs the question at issue: Plaintiff asserts she *does* have the right to redeem her Gift Card for cash and that she has been denied this right. She therefore has standing to bring this action.[2]

## II. ARGUMENT

### A.   Civil Code §1749.5 unambiguously provides Plaintiff the right to redeem her Gift Card for its cash value

At the outset, it is significant to note that Civil Code § 1749.5 arose in the context of various consumer protection lawsuits filed in San Diego which challenged retailers' practices of incorporating expiration dates on Gift Cards and Gift Certificates which were sold to the public. Section 1749.5 is a part of a regulatory scheme granting certain consumer protections, *for consumers*. It is to be read in that context.

Civil Code section 1749.45 provides that "Gift Cards" are within the definition of "Gift Certificates." Furthermore, section 1749.5(b)(1) provides:

> "Any Gift Certificate ...**is redeemable in cash for its cash value** ...."

If these words are to mean anything, the decision as to whether to obtain a card's "cash value" must surely lay with the card holder and not the retailer. The cardholder, after all, is always the person seeking to "redeem" a Gift Card for cash. The full sentence contained in subsection (b)(1) provides:

> "Any Gift Certificate **sold** after January 1, 1997, is **redeemable in cash for its cash value**, or subject to

---

[2] Borders also suggests that Plaintiff purchased her Gift Card to bring this action. This is not true and there is no evidence suggesting it is true. In fact, discovery will show Plaintiff was given the Gift Card to use as she pleased by her boyfriend, who received it as a birthday gift. Hence her desire to cash out the card.

1         replacement with a new gift certificate at no cost to the
2         purchaser or holder."

3     The plain meaning of this sentence in its entirety is that persons wanting to
4 redeem their Gift Cards which have been "sold" may do so for their cash value –
5 not partial cash value – and that if a Gift Card or Gift Certificate needs to be
6 replaced retailers cannot charge to replace them. Although obvious to any
7 consumer, this self evident and common sense reading appears to escape Borders.

8     Borders relies exclusively upon C.C. §1448 to defend its position that
9 retailers can elect whether to honor requests for cash redemption. It provides:

10         "If an obligation **requires the performance of one of two**
11         **acts**, in the alternative, the party required to perform has
12         the right of selection, unless it is otherwise provided by the
13         terms of the obligation."

14     Borders argues that when a customer presents a Gift Card for redemption the
15 retailer is required to perform one of two acts, in the alternative. It takes the
16 position that it can elect never to honor a request for cash redemption and that,
17 instead, when a customer presents a Gift Card for cash redemption, the retailer may
18 simply take the card from the customer and replace it with another one just like it.
19 This is a butchered reading of C.C. 1749.5(b)(1). Such a reading leads to an
20 absurdity and would frustrate the whole point of granting to consumers the right to
21 redeem purchased Gift Cards for their cash value.

22     A Borders employee is not presented with two options when a customer seeks
23 a cash redemption. If requested, redemption must be given. And, if a customer has
24 proof of purchase or proof of gifting, a lost or stolen card must be replaced at no
25 additional cost. The only reason a customer would ever seek "replacement" of a

Gift Card is if it has been lost or stolen.[3] These two distinct stanzas contained in section (b)(1) are separated by a comma, indicating their separateness, and are logically distinct as evidenced by the absurd result which would ensue if they were truly read in the disjunctive.

**B.     Subsection (b)(2) is not "Superfluous"**

While the Borders Gift Cards say that they are not redeemable for cash, Borders does concede that balances less than $10 are in fact redeemable for cash. The Borders Gift Cards are thus deceptive and misleading; the only question is how false and misleading are they?

As described *infra*, subsection (b)(1), by its express terms, applies only to Gift Cards and Gift Certificates which are "sold." In contrast, subsection (b)(2) applies by its express terms to "*any* Gift Certificate ..." That is to say, subsection (b)(2) applies to Gift Cards and Gift Certificates provided to consumers in contexts in addition to the traditional purchase-sale transaction. Having amended section 1749.5 to add subsection (b)(2), the legislature is deemed to be mindful of the language contained in subsection (b)(1) which provides the right of redemption for Gift Cards which are sold. Had the legislature desired to limit a consumers's right to redeem Gift Cards sold after January 1, 1997 to balances of less than $10.00, it would have stricken the right to redeem for "cash value" contained in subsection (b)(1).

Subsection (b)(2) is thus not superfluous as Borders suggests, but rather provides additional consumer protections not granted by subsection (b)(1), which applies only to Gift Certificates which are *sold*. Often customers find themselves with small balances on promotional and rebate cards which are essentially

---

[3]     Prior to the enactment in 1997 of this section Gift Certificates could expire. With the enactment of this section, consumers could request replacement of expired Gift Certificates.

1  unusable, leaving hundreds of millions of dollars unclaimed by consumers.
2  Retailers thus make a "windfall" profit by not only often selling a card for more
3  than its face value, but also reaping the unused portions of the cards in additional
4  back-end profits. This is what subsection (b)(2) sought to correct. The plain
5  reading of subsection (b)(2) differentiates it from those Gift Certificates and Gift
6  Cards covered by (b)(1).

### C. The legislative history supports Plaintiff's claim that she has the right to redeem her Gift Card for its cash value

Given the clarity of the words used in section 1749.5(b)(1) Plaintiff believes that no legislative analysis is necessary, or appropriate.

> "The primary purpose of statutory interpretation is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (*Scripps Health v Marin*, 72 Cal.App.4th 324, 332 (1999)) "Statutory interpretation begins with the text and will end there if a plain reading renders a plain meaning: a meaning without ambiguity, uncertainty, contradiction, or absurdity." (*Oden v Board of Administration*, 23 Cal.App.4th 194, 201 (1994)) (Quoted in *Sonoma State University and Octagon Risk Services v Workers Compensation Appeals Board and Lesley Hunton*, 142 Cal.App.4th 500, 504 (2006)).

The statute does not say, for example, that Gift Certificates sold after January 1, 1997 are redeemable for only a portion of their cash value. To the contrary, it provides that they are redeemable for their "cash value." Civil Code § 1749.5 provides a plain meaning without absurdity or contradiction. Nevertheless, because Borders contends that the statute is unclear, or may be unclear, the legislative history supporting the Plaintiff's reading of the statute is provided.

The author of AB 2466, which is the heart of Civil Code § 1749.5, Jan Goldsmith, specifically argued in the May-June session of 1996 that "gift certificates ought to retain *all the characteristics of cash* itself and remain valid in perpetuity ...." (Exhibit A page 3 to Plaintiff's Notice of Lodgment, quote underlined for Court's convenience). The Assembly Bill analysis given in connection with the escheat of unused Gift Certificate funds provides:

> " [S]ince *this bill requires retailers to cash out or redeem a gift certificate whenever it is presented*, it provides a more convenient method for holders to make their claim than does presenting a claim to the State Controller."
> (Exhibit A page 7 to Plaintiff's Notice of Lodgment, quote underlined for Court's convenience).

The legislative history of Civil Code § 1749.5 is replete with references to redemption of the full cash value, or "face value." The "Purpose" section of the Assembly Bill Analysis for AB 2466, provides:

> "This bill makes it unlawful to sell a gift certificate which contains an expiration date, unless the certificate clearly indicates that it *may be redeemed in cash for its face value* **or reissued after the expiration date** at no cost to the purchaser or recipient." (Exhibit A page 2 to Plaintiff's Notice of Lodgment, quote underlined for Court's convenience).

For those Gift Certificates which are sold, the intention was to allow for "face value" redemption and not some arbitrary amount negotiated by competing special interests. This makes sense because having paid full value for a Gift Card – actually often more than the cash value – consumers should be entitled to return their merchandise, just like a sweater or a blouse, for cash. What possible reason is there, other than greed, to deny consumers the right to return for cash this type of

1  product? On the other hand, it is reasonable to require consumers to utilize to some
2  degree Gift Certificates or Gift Cards which are either promotional in nature or
3  "rebates" which are not "sold," because the very purpose of that kind of Gift
4  Certificate (Gift Card) is to require the customer to make additional purchases at a
5  store location. Plus, having not actually paid cash for these kinds of Gift Cards,
6  consumers are less deserving of full cash redemptions, i.e. retailers deserve some
7  "bang for their buck."

8  The above quoted language from the Assembly Bill Analysis reveals the
9  genesis of the "or" language contained in subsection (b)(1). Because at one time
10 Gift Certificates and Gift Cards could be sold with expiration dates the original
11 intention of the legislature was to require cash redemptions when requested *or*, in
12 the case of expired Gift Certificates, replacement of those Gift Certificates with
13 unexpired Gift Certificates. When it became unlawful to then sell Gift Certificates
14 with expiration dates, the legislature simply deleted the words, "or reissued after
15 the expiration date," with the words "or subject to replacement with a new Gift
16 Certificate at no cost ...." The history thus reveals that it was always the
17 legislature's intention to allow consumers the right to redeem "sold" Gift
18 Certificates and that it was also incumbent upon retailers to replace at no cost
19 expired Gift Certificates. Now that there cannot be "expired" Gift Certificates
20 which are sold, the "or" language clearly relates to replacement of lost or stolen
21 Certificates (Cards). As the document entitled "Unfinished Business" of the Senate
22 Rules Committee addressing SB 250 provides: " This bill includes gift certificates
23 that are <u>donated</u> among those that existing law makes exceptions for."   (Exhibit B
24 page 3 to Plaintiff's Notice of Lodgment, quote underlined for Court's
25 convenience).

26 Furthermore, the Senate Judiciary Committee hearings for the 2007-2008
27 session discussed the fact that there are multiple kinds of Gift Cards and Gift
28 Certificates in the marketplace comprising, at that time, $82 billion in value with

1  $8.2 billion being lost by consumers due to unredeemed value.  In opposing the
2  2008 amendment, the California Grocers Association (CGA) argued that allowing
3  redemptions on all Gift Cards would "substantially complicate the retailer's
4  accounting procedures as the retailer would be forced to anticipate redeeming the
5  certificate for cash as opposed to products or services...." (Exhibit C page 4-5 to
6  Plaintiff's Notice of Lodgment, quote underlined for Court's convenience).  The
7  author of SB 250, Senator Corbett, responded that this was a "red herring" because
8  "[w]hen a consumer has paid full value for a gift card, the retailer should be
9  prepared to give the customer the full value of the card, whether in cash, products
10 or services." (Exhibit C page 5 to Plaintiff's Notice of Lodgment, quote underlined
11 for Court's convenience).  Noting that retailers were already required to offer cash
12 redemptions, Senator Corbett stated,

> "Thus retailers should already be anticipating that a _consumer_ may seek to redeem a gift card for cash, and should have their accounting systems prepared for such an eventuality." (Exhibit C page 5 to Plaintiff's Notice of Lodgment, quote underlined for Court's convenience).

18      Consumers, and not retailers, were given the option to redeem their purchased
19 Gift Certificates for face value and not some lesser amount.  Because non-
20 purchased Gift Certificates like those used in rebate programs and those which
21 have expiration dates have caused consumers to lose massive amounts in unused
22 balances, Civil Code § 1749.5(b)(2) provides a compromise benefit allowing these
23 consumers to at least get the last $9.99 on those balances in cash.
24      As set forth above, subsection (b)(2) does not distinguish between "sold" and
25 "issued" Gift Certificates; rather it refers to "_any_ Gift Certificate ..." indicating the
26 "catch all" intention behind the amendment.
27      The idea that retailers would become "like Banks" or that Gift Cards would
28 become "like a Debit Card" if retailers are required to redeem them for their cash

value is a foolish notion. Whenever goods are returned to a retailer for cash, the retailer has to implement some kind of administrative process to re-stock the item. There is nothing special about a Gift Card which should exempt retailers from giving customers the cash value of a Gift Card. This is especially so because the administrative costs associated with the cards are often built into the sales price, which may be higher than the actual cash value. So unlike a retailer of sweaters who has to give a customer her money back without making any money on the transaction, Gift Card sellers can often make money even if the customer returns the Card for cash.

Finally, Senator Corbett, the author of SB250, made it clear that "when a consumer has paid full value for a gift card, the retailer should be prepared to give the customer the full value of the card, whether in cash, product or services." (Exhibit C page 5 to Plaintiff's Notice of Lodgment, quote underlined for Court's convenience). The notes continue: " Thus retailers should already be anticipating that a consumer may seek to redeem a gift card for cash, and should have their accounting systems prepared for such eventuality." *Id.*

### D.  Plaintiff has standing

Borders argues that Plaintiff does not have standing because Borders is not required to redeem her Gift Card for its cash value. This argument goes directly to the merits of the case and not to Plaintiff's standing for pleading purposes. Obviously the parties disagree as to whether Borders is required to redeem Gift Cards which are sold for their cash value. If Plaintiff is correct, however, and given her allegation that she desires to redeem her Gift Card for cash, standing is established. The denial of Plaintiff's request for redemption of her Gift Card for cash constitutes the "injury in fact" required of UCL plaintiffs. This has been adequately plead in paragraph 5 of the Complaint, which provides:

> Within the past four (4) years, PLAINTIFF received a

Borders Gift Card as a gift. PLAINTIFF desired to redeem the card for cash instead of shopping at Borders stores, but in reading the Borders card noted that it could not be redeemed for cash. PLAINTIFF desires to redeem her card for cash.

As Defendant concedes, "an injury in fact" under the UCL "is an invasion of a legally protected interest ...." (Ps &As at Page 3, line 24). Here Plaintiff's interest lies in the return of the cash value of her Gift Card.

### E.  Plaintiff states a claim for Unjust Enrichment

A claim for unjust enrichment requires pleading "the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Lectodryer v Seolbank*, 77 Cal.App.4th 723, 726 (2000). Here, Plaintiff alleges that Borders has refused to redeem a Gift Card which Plaintiff claims she is entitled to redeem fully for cash. In short, Borders will not give Plaintiff her money back and holds those funds against Plaintiff's will. This is a classic case of unjust enrichment. Plaintiff's allegations are sufficient.

### III. CONCLUSION

It is fair, reasonable and legally required that Borders allow its Gift Card holders to redeem their Gift Cards for their cash value. Defendant's motion should be denied.

Date:   May 20, 2009                        Morris and Associates

*Stephen Morris*
Stephen B. Morris

| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| TITLE OF CASE (Abbreviated): Rudd v. Borders, Inc. | |

| ATTORNEY(S) NAME AND ADDRESS<br>Stephen B. Morris<br>**MORRIS and ASSOCIATES**<br>444 West C Street, Suite 300<br>San Diego, CA 92101 | TELEPHONE<br><br>(619) 239-1300 | |
|---|---|---|
| **ATTORNEY(S) FOR:**<br>Plaintiffs | **HEARING: DATE-TIME-DEPT** | **CASE NUMBER:**<br>3:09-cv-00832-BTM-NLS |

## DECLARATION OF SERVICE BY MAIL

I, Jenna Sarinas, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action. I am employed in the County of San Diego, California, within which county the subject service occurred. My business address is 444 West C Street, Suite 300, San Diego, California 92101. I am readily familiar with the ordinary business practices of my place of employment with regard to collection for mailing with the United States Postal Service and with serving documents via facsimile. I served an original and/or a true and correct copy of the following documents:

1. **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**

2. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

X   BY E-MAIL: I electronically filed the above-listed documents with the Court and a Notification of Electronic Filing was sent to each of the e-mail addresses listed below and mailed on May 21, 2009.

**Attorneys for Defendant:**
Daveed A. Schwartz
Greg L. Johnson
Darcy L. Muilenburg
PILLSBURY, WINTHROP, SHAW, PITTMAN LLP
400 Capitol Mall, Ste 1700
Sacramento, CA 95814-4419
daveed.schwartz@pillsburylaw.com
greg.johnson@pillsburylaw.com
darcy.muilenburg@pillsburylaw.com

I certify under penalty of perjury that the foregoing is true and correct pursuant to the laws of the State of California. Executed on May 21, 2009 at San Diego, California.

Jenna Sarinas

PROOF OF SERVICE